IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

MEDIX STAFFING SOLUTIONS, INC.,
an Illinois corporation,

       Plaintiff,

   v.

DERMCARE MANAGEMENT, LLC,
a Florida limited liability company,

       Defendant.

Civil Action No. 1:24-cv-3779

## **COMPLAINT**

Plaintiff Medix Staffing Solutions, Inc. files this Complaint against Defendant DermCare Management, LLC.

### **PARTIES**

1.    Plaintiff is an Illinois corporation with a principal place of business located at 222 S. Riverside Plaza, Suite 2120, Chicago, IL 60606.

2.    Defendant is a Florida limited liability company with a principal place of business located at 4000 Hollywood Boulevard, Suite 215-S, Hollywood, FL 33021. Defendant's three members, Jeffrey Schillinger, Marc Grad, and Chris Maffei are citizens of Florida.

### **JURISDICTION AND VENUE**

3.    The Court has subject matter jurisdiction based on complete diversity between the parties under 28 U.S.C. § 1332, and the amount in controversy exceeds $75,000.

4.    Plaintiff is a citizen of Illinois.

5.    Defendant, inclusive of all its members, is a citizen of Florida.

6.      This action is appropriately filed in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District and the forum selection clause in the parties' written agreement provides that each party submits to jurisdiction in this Court.

7.      The Court has personal jurisdiction over Defendant and Defendant expressly submitted to the jurisdiction of this Court in the parties' written agreement.

8.      Venue is appropriate in this Court.

## FACTS COMMON TO ALL ALLEGATIONS

9.      Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set out herein.

10.      Plaintiff is a staffing company in the healthcare industry.

11.      Defendant operates as a dermatology practice management company.

12.      On March 22, 2022, Plaintiff and Defendant entered into a written Service Agreement, where Plaintiff agreed to provide staffing services to Defendant (the "Agreement"). Ex. A.

13.      Pursuant to the Agreement, Defendant agreed to compensate Plaintiff for staffing services rendered, as provided within the terms of the Agreement.

14.      Plaintiff fully performed its obligations as Plaintiff supplied Defendant with personnel for use in Defendant's business.

15.      Beginning on or around March 22, 2022, Plaintiff sent Defendant regular and systematic weekly invoices for services rendered, which were received without dispute.

16.      Defendant failed to pay Plaintiff's invoices as they became due.

17.     Throughout the course of the parties' business relationship, Defendant acknowledged the debt and represented to Plaintiff that Plaintiff would be paid.

18.     The Agreement provides that invoices submitted are fully payable unless disputed by Defendant, with written notice to Plaintiff within the 15-day payment term on each invoice.

19.     Defendant failed to submit a timely written dispute of any invoice.

20.     The Agreement provides for a late fee of 1.5% per month for any undisputed invoice.  All the invoices are undisputed.

21.     The Agreement further provides that if Defendant's account, after default, is referred to an attorney or collection agency for collection, Defendant shall pay all of Plaintiff's expenses incurred in such collection efforts, including but not limited to court costs and reasonable attorneys' fees.

22.     Due to Defendant's failure to pay Plaintiff's invoices and Defendant's default, Plaintiff referred Defendant's account to an attorney for collection.

23.     Plaintiff has retained counsel and agreed to pay reasonable attorneys' fees.

24.     Inclusive of the principal balance owed, accrued late charges, costs, and contract-based reasonable attorneys' fees, Defendant's outstanding balance is approximately $80,000.

## COUNT ONE – BREACH OF CONTRACT

25.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-24 as if fully set out herein.

26.     Plaintiff and Defendant entered into a valid and enforceable written contract, to wit, the Agreement.

27.     Plaintiff performed all its contractual obligations owed to Defendant under the Agreement.

28.     Plaintiff satisfied all conditions precedent or such conditions have been waived or excused.

29.     Defendant breached the Agreement by, *inter alia*, failing to pay Plaintiff for the personnel that Plaintiff provided.

30.     The Agreement provides that Defendant owes a late charge of 1.5% per month on invoices that are not paid within 60 days of Defendant's receipt of the invoice.

31.     The Agreement provides that if Defendant's account, after default, is referred to an attorney or collection agency for collection, Defendant shall pay all of Plaintiff's expenses incurred in such collection efforts, including but not limited to court costs and reasonable attorneys' fees.

32.     Due to Defendant's failure to pay Plaintiff's invoices and Defendant's default, Plaintiff referred Defendant's account to an attorney for collection. Plaintiff has retained counsel and agreed to pay reasonable attorneys' fees.

33.     Defendant owes Plaintiff reimbursement of contract-based late charges, costs, and reasonable attorneys' fees.

34.     Inclusive of the principal balance owed, accrued late charges, costs, and contract-based reasonable attorneys' fees, Defendant's outstanding balance is approximately $80,000.

**WHEREFORE**, Plaintiff prays that this Court enter judgment in its favor and against Defendant as follows:

        A.      Principal damages of approximately $80,000;

        B.      Contract-based late charges;

        C.      Contract-based attorneys' fees;

        D.      Prejudgment interest;

        E.      Costs of collection; and,

        F.      Such other and further relief as this Court deems just and proper.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:    */s/ Kenneth E. Chase*
       Kenneth E. Chase
       Chase Law & Associates, P.A.
       2700 N. Military Trail, Suite 150
       Boca Raton, FL 33431
       Tel: (305) 402-9800
       Email: kchase@chaselaw.com

       *Lead Counsel for Plaintiff*
       *Medix Staffing Solutions, Inc.*

       Chris Sioukas
       Medix Staffing Solutions, Inc.
       222 S. Riverside Plaza, Suite 2120
       Chicago, IL 60606
       Tel: (312) 487-5862
       Email: csioukas@medixteam.com

       *Local Counsel for Plaintiff*
       *Medix Staffing Solutions, Inc.*

# EXHIBIT A

CONFIDENTIAL



<u>**SERVICE AGREEMENT**</u>

This agreement for staffing services (the "Agreement") is entered into as of the last date executed by the parties (the "Effective Date") by and between DermCare Management, LLC., a Florida limited liability company, including its subsidiaries, divisions, and affiliates ("Client"), and Medix Staffing Solutions, Inc., an Illinois corporation ("Medix"), pursuant to the provisions of this Agreement.

**Recitals**

WHEREAS, Medix is a staffing company that places (1) Medix job candidates for employment ("Candidates") or (2) Medix employees for assignment ("Contractors"), with its clients.

WHEREAS, "staffing services" shall consist of Medix (itself or a subcontractor), at Client request, placing Candidates or Contractors with Client, and may include, but not be limited to, the following placement types: a temporary Contractor; the conversion of a Contractor to an employee of Client; the payrolling of a Contractor; an independent contractor; or the direct hire of a Candidate by Client.

WHEREAS, Client desires to engage Medix for staffing services.

THEREFORE, the parties agree:

**Agreement**

1.      **Independent Contractor Status**. With respect to the services provided by Medix, Medix shall be an independent contractor. Medix shall be responsible for providing any salary or other benefits to Contractors; will make all appropriate tax, social security, Medicare, and other withholding deductions and payments; will provide worker's compensation insurance coverage for its Contractors; and will make all appropriate unemployment tax payments. Medix is, and will hereafter act as, an independent contractor and not as an employee of the Client and nothing in this Agreement shall be interpreted or construed to create any employment, partnership, joint venture, or other relationship between Medix and Client. Medix will not hold itself out as having and will not state to any person that Medix has any relationship with the Client other than as an independent contractor.

2.      **Temporary Contractors**. Medix will employ a Contractor and deliver such Contractor to Client on a temporary basis, as requested by Client. Medix will charge Client an hourly bill rate for the time worked by each Contractor. Unless otherwise agreed by the parties, a Medix timesheet shall be the official time record of a Contractor. Fees billed by Medix to Client shall be supported by a timesheet approved by Client. Client approval shall be provided on a weekly basis no later than noon on Tuesday for the previous week's hours worked. Medix will charge Client one and one point five zero (1.50) times the bill rate for overtime, when required by law, and holidays. Should a Contractor's assignment with the Client end within the first sixteen (16) hours of such assignment, Medix will waive the charge for that period of time. Client must immediately notify Medix of and seek prior approval from Medix for any significant change(s) in job duties or scope for Contractors on assignment with Client.

3.      **Temporary-to-Permanent Conversion**. With its temporary-to-permanent conversion program, Medix provides Client with a method by which to hire a Contractor after a certain period of work time at no additional charge. Should Client elect to hire a Contractor prior to the expiration of such time period, the conversion fee schedule will apply. The conversion fee is calculated as a percentage of the Contractor's first year annualized cash salary, inclusive of non-discretionary bonuses, as an employee of Client ("First Year Annualized Salary"). The percentage applied is contingent upon the number of accumulated work hours logged by a Contractor on assignment with Client. An invoice shall be issued to Client in the amount of the conversion fee as stated below.

Information Technology:

| Hours | Fee |
|---|---|
| 0-256 | 25% |
| 257-464 | 20% |
| 465-672 | 15% |
| 673-880 | 10% |
| 881-1040 | 5% |
| 1041+ | Fee Waived |

Healthcare Amin & Healthcare Professional (Allied Services & Coding):

| Hours | Fee |
|---|---|
| 0-160 | 18% |
| 161-320 | 14% |
| 321-520 | 9% |
| 521-720 | 3% |
| 721+ | Fee Waived |

Life Sciences (including Clinical Research) & Engineering:

**CONFIDENTIAL**

| Hours | Fee |
|---|---|
| 0-312 | 30% |
| 313-624 | 25% |
| 625-936 | 20% |
| 937-1,248 | 15% |
| 1,249 - 1,560 | 10% |
| 1561+ | Fee Waived |

Care Management:

| Hours | Fee |
|---|---|
| 0-256 | 25% |
| 257-464 | 20% |
| 465-672 | 15% |
| 673-880 | 10% |
| 881-1040 | 5% |
| 1041+ | Fee Waived |

Client agrees that, as a requirement to convert a Contractor from temporary to permanent, Client's account must have no balances outstanding beyond the net payment terms specified in this agreement. If Client has any outstanding balance on their account with Medix, Client must obtain written approval from Medix's Director of Finance prior to converting a Contractor. Requests for approval from Medix's Director of Finance can be sent to legal@medixteam.com.

4.       **Direct Hire**. Through its direct hire program, Medix will, upon Client request, submit Candidates for employment with Client in consideration for a placement fee earned upon commencement of employment (the "Direct Hire Fee"). For each Candidate placed with Client, Medix will earn the Direct Hire Fee, billed and payable according to the Agreement. For all Direct Hires through Medix's Life Sciences/Clinical Research & Engineering divisions, the amount of the Direct Hire fee will be 30% of the Candidate's First Year Annualized Salary. For all other Direct Hires, the amount of the Direct Hire fee will be 25% of the Candidate's First Year Annualized Salary. Should the Candidate's employment with Client end due to voluntary termination or involuntary termination resulting from misconduct or poor work performance within thirty (30) days of commencement, Medix will replace the Candidate at no additional charge, provided that Client gives Medix notice within fifteen (15) days after the Candidate's termination. Notices of Candidate Terminations are to be sent to Medix Staffing Solutions, Inc., 222 S. Riverside Plaza, Suite 2120, Chicago, IL 60606, Attn: Billing or billing@medixteam.com.

5.       **Fees**. In the form of a written or electronic invoice, Medix will bill Client for, and Client agrees to pay, fees for services rendered. Fees for staffing services may be detailed in Attachment A of this Agreement, a subsequent statement of work or work order signed by the parties. Medix and Client may also use written work orders to specify the details (including, but not limited to, Contractor/Candidate name, start/hire date, position worked, and bill rates or placement fee) of each assignment or placement under this Agreement. Contractor fees shall be billed weekly upon commencement of a Client assignment, and for Candidates shall be billed lump sum upon commencement of employment with Client. Invoices submitted by Medix to Client are presumed to be accurate and fully payable unless disputed by Client, with written notice to Medix, within the payment terms of this Agreement.

6.       **Payment**. Payment on invoices for any and all staffing services is due Net 15 from the date of the invoice. Medix reserves the right to apply a late charge of 1.50% per month on the amount of the past due balance for invoices that are not paid within sixty (60) days of the Client's receipt of the invoice. If Client's account is past due and Medix has notified Client of the past due balance, Medix may, without any further notice to Client, immediately cease delivery of any and all staffing services to Client without any duty to reimburse, indemnify, defend, or hold harmless Client for costs related to the disruption, including, but not limited to, lost profits, payroll liabilities, or any other expenses. If Client's account, after default, is referred to an attorney or collection agency for collection, Client shall pay all of Medix's expenses incurred in such collection efforts, including but not limited to, court costs and reasonable attorneys' fees. Client shall remit payments of invoices to Medix Staffing Solutions, Inc., 7839 Solution Center, Chicago, IL 60677-7008.

7.       **Expenses**. Client will reimburse Medix for all ordinary, necessary, and reasonable travel expenses incurred by Contractors while performing services on behalf of Client. Unless Client provides Medix Client's official expense policy, the parties agree to use Medix's expense policy, which will be provided upon request. Medix will bill Client for expenses at cost within sixty (60) days after the expense was incurred.

8.       **International Travel**. Medix's Contract Employee(s) are not authorized to travel internationally without Medix's prior written permission. Client shall not request or require Medix's Contract Employee(s) to perform tasks which require international travel without Medix's prior written permission.

9.       **Covenant**. Medix is not an employment agency, and therefore does not charge Candidates or Contractors for services rendered in facilitating employment. The staffing services Medix provides to Client are done so at great expense to Medix. Information, including but not limited to resumes or profiles submitted by Medix to Client, about a Candidate or Contractor, is confidential and for Client use only. Except as provided below, Client agrees that Medix is the representative of all Contractors and of all Candidates for which information is submitted to Client. Accordingly, Client agrees that if a Candidate or Contractor is hired either directly or indirectly by Client or an affiliate, subsidiary, or parent of Client within twelve (12) months of Client's receipt of a Contractor's or a Candidate's profile, or of a Contractor's last date of employment, without payment of due compensation to Medix, Client will pay Medix, as liquidated damages, an amount equal to the applicable conversion or Direct Hire Fee in this Agreement. Client further agrees that liquidated damages may not be sufficient to protect and/or restore Medix in the event that Client hires a Candidate or Contractor without Medix's approval and that, if Client's account has any balances outstanding

2

**CONFIDENTIAL**

beyond the payment terms set forth in this Agreement, Medix shall have the right to seek an injunction to prevent Client from hiring a Candidate or Contractor until Client's account is paid in full. Notwithstanding the foregoing, Medix shall not be entitled to a fee when the following occurs within the ninety (90) days immediately preceding Medix's referral or submittal of a candidate to Client: (i) Client has received a candidate's resume, profile, or information either directly or from a third party agency for the specific open position, and (ii) Client has attempted to contact the candidate directly. Client must notify Medix within three (3) business days of Medix's submittal of any candidates for whom Client is claiming Medix is not entitled a fee.

10. **Indemnification**. Medix agrees to indemnify and hold harmless Client, its parent and affiliates and their directors, officers, and agents from and against any and all claims, actions, or liabilities which may be asserted against them by third parties in connection with the sole negligent performance of Medix, its directors, officers, employees or agents under this Agreement only. Client agrees to indemnify and hold harmless Medix, its directors, officers, employees and agents from and against any and all claims, actions, or liabilities which may be asserted against them by third parties in connection with the negligent performance of Client, its directors, officers, employees, contractors, or agents under this Agreement.

11. **Limitation of Liability**. Neither Medix nor Client will be liable or responsible for special, indirect, incidental, consequential, punitive or other similar damages, including but not limited to lost profits, that the other party may incur or experience in connection with this Agreement or the services provided, however caused, even if such party has been advised of the possibility of such damages. Medix will not be liable for any claims, costs, expenses, damages, obligations, or losses of Client or any third party arising from, or in connection with, the acts or omissions of any Candidate or Contractor.

12. **Insurance**. Medix will maintain (at its sole expense) valid policies of insurance evidencing commercial general and professional liability coverage of not less than $1,000,000 per occurrence and $3,000,000 in the aggregate, covering Medix's negligent acts or omissions which may give rise to liability for services provided under this Agreement. Medix will also maintain workers' compensation coverage, with statutory limits, covering all employees, in each applicable state for which Medix's employees reside or work. Medix will provide a certificate of insurance evidencing such coverages upon request by Client.

13. **Warranty**. Medix warrants that it will provide the services in a professional and workmanlike manner consistent with industry standards. Medix does not warrant or guarantee that a Candidate or Contractor will produce any particular result or any solution to Client's particular needs. Accordingly, Client acknowledges and agrees that Medix is not responsible for any aspect of a Candidate's or Contractor's work, including, without limitation, meeting deadlines or producing any particular work product. Client will maintain full authority and responsibility for supervising, directing, and controlling a Candidate's or Contractor's work.

14. **Motor Vehicles**. Medix's Contract Employee(s) are not authorized to operate a motor vehicle without Medix's express written permission. Client shall not request or require Medix's Contract Employee(s) to perform tasks which require driving a motor vehicle without Medix's written permission.

15. **Compliance**. Each party agrees that it will comply with applicable federal, state, and local laws in connection with the services, including but not limited to the following:

    a.   **Health And Safety**. Client shall provide a safe, clean work environment that complies with all applicable local, state and federal laws. Client agrees to train, certify, evaluate and orient all Contractors in all applicable safety, hazardous communication, and operational instructions in the same manner as Client employees and as required by policy or by law, including but not limited to, all federal OSHA and equivalent state agency requirements, guidelines, and standards. To the extent a Contractor is obligated to meet site-specific training requirements in order for Client to comply with applicable site-specific legal requirements, the Client shall provide the Contractor with all necessary training before placing the Contractor into the work environment and before allowing the Contractor to commence the specific assignment. Client will provide and require all Contractors to wear all appropriate safety equipment. Client will notify Medix immediately in the event of an accident or medical treatment of any Contractor, and Client will provide Medix with a completed supervisor's report of injury. In the event of an accident or other incident involving a Contractor, Medix shall have the right to conduct an onsite investigation. Client shall cooperate with Medix in the conduct of its investigation. Client will be responsible for all OSHA recordkeeping responsibilities required by law in the performance and execution of the terms of this agreement. Client shall indemnify Medix and hold it harmless against and from any claims made or brought as a result of Client's breach of its obligations contained in this paragraph.

    b.   **Background Checks**. Medix will perform background and drug screenings on its Contractors prior to beginning an assignment with Client in accordance with the screens listed in Attachment B. Requests for additional screening from the Client must be in writing and will be performed at Client's sole expense. Unless screening requirements change over time, Attachment B will be sufficient documentation of screening requirements for all Contractors going forth.

    c.   **Federal and State Program Eligibility**. Medix, to the best of its knowledge, represents that neither it nor any of its employees have been or currently are under investigation for any violations of the various provisions or laws governing Medicare, Medicaid, any federally funded health care benefit program and/or any private health care benefit program which could lead to exclusion from such programs; and neither it nor any of its employees or agents has ever (1) been convicted of: (a) any offense related to the delivery of an item or service under Medicare, Medicaid, any private health care benefit program or any federally funded program; (b) a criminal offense relating to neglect or abuse of patients in connection with the delivery of a health care item or service; (c) fraud, theft, embezzlement, or other financial misconduct in connection with the delivery of a health care item or service; (d) obstructing an investigation of any crime referred to in (a), (b) or (c) above; or (e) unlawful manufacture, distribution, prescription or dispensing of a controlled substance; (2)

3

been required to pay any civil monetary penalty regarding false, fraudulent or impermissible claims under, or payment to induce a reduction or limitation of health care services to beneficiaries of, any state, federal or private health care benefit program; or (3) been excluded from participation in Medicare, Medicaid, any private health care benefit program or any other federally funded program.

16.    **Affordable Care Act**.  Medix will comply fully with the Patient Protection and Affordable Care Act and the rules and regulations relating thereto (the "ACA") by offering Contractors and Contractors' dependent' minimum essential coverage when required by law.  Medix charges an amount equal to 3.25% of the bill rate to cover the cost of providing insurance under the ACA.  This cost shall be listed as a separate line item on any invoices for temporary services that Client receives from Medix.

17.    **Pricing Adjustment**.  Medix reserves the right to increase the bill rates and adjust fees charged to Client for temporary staffing services due to any increases in the cost of doing business caused by federal or state legislation and/or regulations, including, but not limited to, employee paid sick leave or hazard pay laws or changes to state unemployment tax (SUTA), federal unemployment tax (FUTA), and state and/or federal healthcare reform laws.  Medix will provide Client written notice setting forth the reason and amount of any such bill rate or fee adjustment.  Any rate adjustment will be applicable on a going forward basis only.

18.    **Equal Opportunity**.  Medix is an equal opportunity employer and refers candidates, regardless of race, sex, color, religion, creed, ancestry, national origin, physical handicap, age, marital status or other protected class status pursuant to applicable law.  Client agrees and warrants that it will not reject candidates, or otherwise deem candidates unacceptable, or take any other action for any reason prohibited by federal, state, or local laws including, but not limited to, laws pertaining to employment discrimination or employee safety.

19.    **Client Property**.

    a.    **Ownership of Work Product**.  Medix acknowledges and agrees that all work performed in connection with or related to the staffing services shall be considered "work for hire" and is the sole and exclusive property of Client and, under all circumstances, all title thereto shall remain solely and exclusively in Client.  To the extent the staffing services include any of Medix's proprietary property, Medix hereby grants to Client without restriction or further payment with respect thereto, a perpetual, world-wide, non-exclusive, irrevocable and royalty-free license to use such proprietary property solely in connection with the staffing services.  This Section shall apply equally to all Medix employees and Contractors, and Medix shall cause its employees and contractors to comply with its terms.

    b.    **Damages**. Medix does not provide insurance coverage for any real or personal property of Client, including but not limited to machinery, equipment, computers, tools, vehicles or other real or personal property which is owned or leased by Client.  Client agrees that in the event it supplies, provides, or otherwise allows Contractors to use or have access to any property of Client (including but not limited to cell phones, laptop computers, tools, etc.), Client shall be solely responsible for any damage, theft, repair, or loss associated with this property, and Client shall indemnify, hold harmless, and defend Medix against and from such claims made or brought for any damaged, stolen, or lost property of Client.

20.    **Confidentiality**.

    a.    **Medix/Client Information**. The parties recognize and acknowledge that, by virtue of entering into this Agreement and providing services hereunder, the parties will have access to certain information of the other party that is confidential and constitutes valuable, special, and unique property of the party. Each of the parties agrees that neither it nor his/her staff shall, at any time either during or subsequent to the term of this Agreement, disclose to others, use, copy, or permit to be copied, except pursuant to his duties for or on behalf of the other party, any secret or confidential information of the party, including, without limitation, information with respect to the party's patients, costs, prices, and treatment methods at any time used, developed, or made by the party during the term of this Agreement and that is not available to the public, without the other party's prior written consent.

    b.    **Terms of this Agreement**.  Except for disclosure to his/her legal counsel, accountant or financial or other advisors/consultants neither party nor its respective staff shall disclose the terms of this Agreement to any person who is not a party or signatory to this Agreement, unless disclosure thereof is required by law or otherwise authorized by this Agreement. Unauthorized disclosure of the terms of this Agreement shall be a material breach of this Agreement and shall provide the party with the option of pursuing remedies for breach or immediate termination of this Agreement in accordance with the provisions stated herein.

    c.    **Confidentiality of Patient Information**. In the course of receiving the services to be provided by Medix under this Agreement, Client may disclose to Contractors Medix assigns to Client protected health information ("PHI"), as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and its accompanying regulations at 45 CFR Parts 160 and 164 ("HIPAA").  HIPAA permits a covered entity (as defined in HIPAA) to disclose such PHI for purposes of carrying out its health care operations (also as defined in HIPAA).  Because Client is a covered entity, the disclosure by Client to Contractors Medix assigns to Client of any PHI for the purposes described in the Agreement constitutes a disclosure for purposes of health care operations. Medix and Client acknowledge that PHI is not and will not be exchanged between Medix and Client in connection with Medix's provision of staffing services and Contractors under this Agreement, and Medix shall ensure that no PHI disclosed to Personnel by Client is shared with Medix.

    **d.    Data Use and Protection**. In the event a Contractor is issued a non-client laptop while on assignment with Client, Client shall implement controls reasonably necessary to prevent download or improper use of PHI, personally identifiable information ("PII"), or other confidential information that the Contractor may encounter in the course of their assignment with Client. Client further agrees that it will: use appropriate protections; implement secure protocols and necessary safeguards; and restrict system access as needed in order to properly prevent such download or improper use. Medix shall require Contractors to affirm that they will not use, download, or store PHI, PII, or other confidential information encountered while on assignment with Client.

4

CONFIDENTIAL

e.   The obligations set forth in this Section shall survive the termination of this Agreement.

21.     **Termination**.  Either party, upon thirty (30) days prior written notice to the other, may terminate this Agreement without cause.  All rights and duties of the parties that accrued prior to the termination of the Agreement shall survive the termination.

22.     **Notices**.  Any notice given under this Agreement shall be in writing and delivered personally, sent overnight by a nationally recognized carrier with a tracking number, or sent by mail, certified, postage prepaid with return receipt requested.  In each case, notices shall be delivered or sent to the parties at the following addresses:

| If to Client | If to Medix |
|---|---|
| DermCare Management, LLC. | Medix Staffing Solutions, Inc. |
| 4000 Hollywood Blvd, Suite 215S | 222 S. Riverside Plaza, Suite 2120 |
| Hollywood Florida, FL 33021 | Chicago, IL 60606 |
| | |
| Attn: Marc Grad | Attn: Legal |

23.     **Entire Agreement**.  This Agreement constitutes the entire agreement between the parties, and there are no representations, warranties, covenants, or obligations except as set forth in this Agreement.  This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties relating to any transaction contemplated by the parties to this Agreement.

24.     **Amendments and Modifications**.  This Agreement may be amended, waived, changed, modified, or discharged only by an agreement in writing signed by all parties to this Agreement.  Except for blanks on originally printed forms, no handwritten or separately printed additions or changes will be effective unless they are initialed or signed by both parties.

25.     **Assignment**.  Except as otherwise provided in this Agreement, neither party shall assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of the other party.  Notwithstanding the foregoing, upon written notice to Medix, Client shall have the right to assign this Agreement to an affiliate or in connection with a merger or the sale of all or substantially of Client's assets or controlling equity interests.

26.     **Governing Law**.  The laws of the State of Illinois shall govern the validity and construction of this Agreement and any dispute arising out of or relating to this Agreement, without regard to the principles of conflict of laws.  Each party hereby submits to the jurisdiction of the United States Federal Court System, Seventh Circuit, Illinois Northern District, Eastern Division or of the Illinois Court System, Cook County Circuit in any legal proceeding instituted by either party arising out of or relating to this Agreement.

27.     **Government Contracting**.  Client represents and warrants that if the services to be provided by Contractors are (i) supporting a contract for the United States, State or Local Government; or (ii) subject to any federal, state, or local prevailing wage determination, including but not limited to, the Service Contract Act of 1965, Davis-Bacon Act, or Walsh-Healey Public Contract Act, that Client acknowledges and agrees that Client is responsible for (i) prior notification to Medix of any and all projects that support a contract with the United States, State or Local Government, and (ii) the accuracy of any applicable prevailing wage determinations and flow down provisions.  If it is later determined that such services provide by Contractors were in support of a United States, State or Local Government contract, Client agrees to indemnify Medix for any claims, costs, or fees which (i) Medix may incur from any misclassification related to such determination; and (ii) result from any inaccuracy of the Client provided wage determination including, but not limited to, the failure to notify Medix that the services provided by Contractors are or were required to be paid at a prevailing wage.  Should Client fail to notify Medix of an applicable prevailing wage or provide accurate wage determinations, Medix reserves the right to bill Client the difference in the rate for all hours worked plus any statutory or regulatory costs associated with such rate difference.  Further, Medix will charge a ten percent (10%) fee, as liquidated damages for Client's failure to notify Medix that a prevailing wage applies, which will be calculated based on the total difference in the rate for all hours worked.

28.     **Waiver**.  Failure to insist upon strict compliance with any of the terms, covenants or conditions of this Agreement shall not be deemed a waiver of such term, covenant, or condition or of any other term, covenant, or condition.  Any waiver or relinquishment of any right or power in this Agreement at any one or more times shall not be deemed a waiver or relinquishment of that right or power at any other time.

29.     **Remedies**.  The remedies set forth in this Agreement are cumulative and are in addition to any other remedies allowed at law or in equity.  Resort to one form of remedy shall not constitute a waiver of alternate remedies.

30.     **Severability**.  A ruling by any court that one or more of the provisions contained in this Agreement is invalid, illegal or unenforceable in any respect shall not affect the validity, legality, or enforceability of any other provision of this Agreement.  Thereafter, this Agreement shall be construed as if the invalid, illegal, or unenforceable provision had been amended to a form originally contemplated by the parties to this Agreement to the greatest extent possible.

31.     **Headings**.  The section and subsection headings of each provision in this Agreement have been included for convenience only, are not part of this Agreement, and shall not be taken as an interpretation of any provision of this Agreement.

32.     **Counterparts**.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original.  Executed agreements can be submitted to Medix at legal@medixteam.com or Medix Staffing Solutions, Inc., 222 S. Riverside Plaza, Suite 2120, Chicago, IL 60606, Attn: Contracts.

**CONFIDENTIAL**

**DermCare Management, LLC.**                    **Medix Staffing Solutions, Inc.**

                                                           **Medix Staffing Solutions, Inc.**

By: _____        By: ___ 🔒 _____
Name: ___Marc Grad EVP___               Name: **Michael Silva**
Title: _____      Title: Account Executive
Date: ___3/22/22___                     Date: March 22, 2022    15:08 UTC
                                              IP: 104.34.179.18

6

CONFIDENTIAL

### ATTACHMENT A

**Orientation.** Regular bill rates will be charged for all time spent in required Client orientation.

**Overtime.** Overtime rates are charged for all hours worked in excess of forty (40) per week or according to applicable state law. Overtime must have Client supervisory approval. The overtime rate is one point five zero (1.50) times the regular billing rate for such hours.

**Holidays.** Holiday rates will apply to shifts beginning at 11:00 p.m. the night before the holiday through 11:00 p.m. the night of the holiday. Time and one-half will be charged for the following holidays:

| | |
|---|---|
| New Year's Eve (from 3 PM) | Thanksgiving Day |
| New Year's Day | Labor Day |
| Memorial Day | Christmas Eve (from 3 PM) |
| Independence Day | Christmas Day |
| Easter | Presidents Day |
| Martin Luther King Day | Pioneer Day (Utah Only) |

CONFIDENTIAL

**ATTACHMENT B**

Medix will perform the following background and drug screens:

1.    Contractors used for non-clinical and non-direct patient care roles, including Engineering, Construction, Environmental, and Manufacturing roles:

- 7 Year Multi-State Criminal Database
- 7 Year County Criminal Database and Social Security Number Trace
- If the position is in a healthcare facility or hospital, a Fraud and Abuse Control Information Systems (FACIS) Level 3 Search

2.    Contractors filling certain high risk positions, including roles that require driving, Engineering/Construction/Environmental/Manufacturing roles, Clinical and Direct Patient Care positions, and other high risk positions as determined by Medix from time to time at its sole discretion.  A current list of high risk positions can be found at https://www.medixteam.com/compliance-positions/.

- Everything included in Section 1 above;
- 8 Panel Drug Screen (does not include marijuana or Quaaludes)

3.    Clinical and Direct Patient Care Positions:

- Health screens, to include, proof of or vaccination/declination of:
  - TB (Tuberculosis – using TB Skin Test)
  - Hepatitis B (for blood exposed roles only)
  - Influenza
  - MMR (mumps, measles, and rubella)
  - Varicella

4.    Professional License Verification (if applicable).  Unless specifically requested by Client and agreed to herein or as required by state law, Medix does not require Medical Assistants, Phlebotomists, Pharmacy Technicians, and Sterile Processing Technicians to be certified.

Medix will, upon Client request, provide Client with the results of a Contractor's background check.  Client agrees to use the results of any background check sent by Medix for employment purposes only and to hold the information obtained in the strictest confidence.  Client agrees that the standard background checks detailed in this section are sufficient and will not hold Medix accountable for failure to run any additional or alternate background checks.